IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNET TRANSACTION SOLUTIONS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. C2 06 0035 |
| | : | |
| INTEL CORPORATION, | : | Judge Holschuh |
| | : | |
| Defendant. | : | Magistrate Judge Abel |

**DEFENDANT INTEL CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER**

I.  **INTRODUCTION**

This Court should dismiss Internet Transaction Solutions, Inc.'s ("ITS") declaratory judgment complaint that was filed only one court day before Intel Corporation ("Intel"), the natural plaintiff in this matter, filed its complaint in the Northern District of California for infringement and dilution of Intel's famous INTEL INSIDE mark and unique {"term"} INSIDE brand format and family of marks. ITS raced to the courthouse, in response to Intel's initial attempt to resolve this matter via a negotiated out-of-court settlement, for the sole purpose of depriving Intel of its choice of forum and obtaining a perceived procedural and negotiating advantage. Under these circumstances, the Court should exercise its discretion and decline to entertain ITS' declaratory judgment action rather than sanction ITS' procedural maneuvering and the resultant waste of judicial resources. If the Court permits this action to proceed, it will only encourage races to the courthouse and require natural and rightful plaintiffs such as Intel to file court actions before even attempting to approach parties, such as ITS, in an effort to resolve their

differences short of litigation. Dismissal is also warranted because ITS' narrow declaratory complaint will not resolve the entire controversy between the parties. Intel's affirmative complaint in the Northern District of California contains claims under the laws of California and other states, as well as under federal law. In the alternative to a dismissal, this Court should transfer ITS' declaratory judgment action to the Northern District of California.

## II.    FACTUAL BACKGROUND

Intel is the world's leading manufacturer of computer microprocessors and other computing, communications, and Internet-related goods and services. Intel owns several world-famous trademarks, such as INTEL, PENTIUM, INTEL INSIDE, and Intel's {"term"} INSIDE brand format. The INTEL INSIDE mark was first introduced by Intel in 1991 as part of its revolutionary co-operative advertising program. Since that time, Intel and its licensees have invested billions of dollars advertising and promoting computer products bearing the INTEL INSIDE logo. The INTEL INSIDE mark has become ubiquitous, appearing in television, radio, and print advertisements and on millions of computers around the world. The use of this creative, grammatically incorrect "{term} INSIDE" brand format as a trademark did not exist prior to its creation by Intel, and it has been a unique and highly effective way to indicate to consumers that the brand attributes of Intel – cutting edge technology, quality, reliability, and safety – are part of the personal computer by way of Intel's ingredient products. (Livingstone Decl. ¶2)

To protect its valuable intellectual property assets, and consistent with the obligation placed on owners of famous trademarks to police their marks, Intel regularly monitors the marketplace and applications filed with the United States Patent and Trademark Office to discover and prevent third party uses that infringe or dilute Intel's marks. When Intel discovers a

third party violating Intel's trademark rights, Intel typically writes to that party providing notice of Intel's objections, and then attempts to quickly and amicably resolve the matter by obtaining an agreement to cease the infringing or diluting use. Only if this informal effort fails does Intel file suit for injunctive and monetary relief. (Livingstone Decl. ¶3)

On December 9, 2005, Intel learned that ITS filed an application with the United States Patent and Trademark Office (dated November 23, 2005) seeking to register the mark ePAYMENTS INSIDE for electronic bill payment services. ITS's application claims that it began using the mark in commerce on August 1, 2005. (Livingstone Decl. ¶4)

On December 22, 2005, Intel sent a letter to ITS objecting to its use of and application to register ePAYMENTS INSIDE. Intel set forth its ownership of the world famous INTEL INSIDE trademark, as well as Intel's unique {"term"} INSIDE brand format and family of marks, and explained Intel's position that ITS' ePAYMENTS INSIDE mark infringes and dilutes Intel's valuable trademark rights. Intel requested ITS to cease use of ePAYMENTS INSIDE and abandon its trademark application. Intel indicated its willingness to negotiate an amicable resolution, and asked for a response by January 13, 2006. Intel also stated that it would take appropriate action to protect its rights if necessary. Intel received no response at all to its letter prior to ITS' filing of this declaratory judgment action. (Livingstone Decl. ¶5)

On Friday, January 13, 2006, Intel received a telephone message from ITS' counsel indicating that ITS responded to Intel's overture by filing a declaratory judgment complaint in this Court, but that ITS was willing to discuss settlement. The same day, ITS' counsel emailed Intel a copy of the complaint that seeks a declaratory judgment that ITS's use of the ePAYMENTS INSIDE mark does not infringe or dilute Intel's trademark rights under federal

law - the Lanham Act and the Federal Trademark Dilution Act, respectively. (Livingstone Decl. ¶6)

On Tuesday January 17, 2006, the next court day after ITS filed this action, Intel filed a complaint for affirmative relief against ITS in the United States District Court for the Northern District of California ("the California Action"), where Intel's principal place of business is located. Intel's California Action is much broader than the narrow declaratory judgment action filed by ITS. Intel's complaint alleges trademark infringement and false designation of origin under the Lanham Act (15 U.S.C. §§ 1051-1127 *et seq.*) and California law (Cal. Bus. and Prof. Code § 14335), dilution under the Federal Trademark Dilution Act of 1995 (15 U.S.C. § 1125(c)) and California Dilution Act (Cal. Bus. and Prof. Code § 14330), and unfair competition under California law (Cal. Bus. and Prof. Code § 17200).. In addition, Intel's complaint alleges claims of dilution under the Texas Dilution Act (Tex. Bus. & Comm. Code § 16.29), the Missouri Dilution Act (Mo. Rev. Stat. § 417.061), and the Georgia Dilution Act (Ga. Code Ann. § 10-1-451(b)) based upon ITS' business dealings in these states. (Livingstone Decl. ¶7)

## III. ARGUMENT

In *AmSouth Bank v. Dale,* 386 F.3d 763, 788 (6th Cir. 2004), the Sixth Circuit stated:

> Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum. *Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit.* (emphasis added).

*See NGS Am., Inc. v. Jefferson,* 218 F.3d 519, 523 (6th Cir. 2000) ("[A] rule permitting the action could frustrate a plaintiff's choice of forum and encourage forum shopping, races to the

4

courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process to harass an opponent in litigation.").

Whether or not to permit ITS to proceed with its declaratory judgment action is within the sound discretion of this Court. The Federal Declaratory Judgment Act ("the Act") provides:

> In a case of actual controversy within its jurisdiction, . . .any court of the United States, upon the filing of the appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration. . . .

28 U.S.C. § 2201(a) (emphasis added). The Act accords district courts a "unique breadth of ... discretion to decline to enter a declaratory judgment." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288; 115 S. Ct. 2137, 2143 (1995) (rejecting the argument that district courts are authorized to decline to exercise declaratory judgment jurisdiction only in "exceptional circumstances"). In *Wilton,* the Supreme Court observed that the Act is "an enabling Act" that confers on district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286 and 287; 115 S. Ct. at 2142.

The Sixth Circuit applies a five factor test to determine whether a district court should exercise jurisdiction over a declaratory judgment complaint: "(1) whether the judgment would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *AmSouth,* 386 F.3d at 785. A review of these factors indicates that this Court should dismiss ITS' declaratory judgment complaint or, in the alternative, transfer it to the Northern District of California.

### A.     ITS Filed This Action for The Sole Purpose of Obtaining Its Preferred Forum

It is clear from ITS' conduct that it filed this action for the sole purpose of obtaining its preferred forum. Rather than respond to Intel's initial overture to discuss a resolution, ITS raced to the courthouse to file this action on the same day as its response was due to Intel's letter. ITS rushed to file this action for strategic, preemptive reasons – to deprive Intel of its natural position as plaintiff and attempt to secure a forum ITS apparently views as more favorable. ITS also filed as a bargaining chip and to obtain a leg-up in settlement negotiations ITS has now indicated it is willing to pursue. Such conduct is contrary to public policy, as it rewards procedural maneuvering, discourages good faith settlement efforts, and wastes judicial resources.

ITS' procedural fencing has been frowned upon by the Sixth Circuit and district courts in this circuit. *E.g., Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 Fed. Appx. 433 (6th Cir. 2001) (unpublished) (affirming the dismissal of a trademark declaratory judgment action in part because the declaratory action was filed on the next-to-last day of a negotiation period set by the trademark holder); *Albie's Foods, Inc. v. Menusaver, Inc.*, 170 F. Supp. 2d 736, (E.D. Mich. 2001) (court declined to hear patent declaratory judgment suit that was filed after receipt of only one infringement letter for the sole purpose of preserving plaintiff's interest in litigating in its home district); *Sign of the Beefeater, Inc. v. James Burrough Ltd.*, 185 U.S.P.Q. (BNA) 524 (E.D. Mich. 1975) ("Particularly where an affirmative suit is about to begin, the right to a declaratory suit is weak.").

Courts throughout the country take the same dim view of this strategy. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987) ("The federal declaratory judgment is not a prize to the winner of the race to the courthouse."); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) ("A first-filed suit may be dismissed when the sole motive for filing is forum shopping."); *Psarianos v. Standard Marine*, 12 F.3d 461, 462 (5th Cir.

6

1994) (citing authority dictating that jurisdiction be declined when there is an adequate alternative forum, the declaratory relief suit is filed in anticipation of another suit so as to permit forum shopping, or the declaratory relief action is filed to permit plaintiff to gain precedence in time or forum); *Koch Eng'g Co. v. Monsanto Co.*, 621 F. Supp. 1204, 1206 (E.D. Mo. 1985) (noting the Eighth Circuit's rule that the declaratory judgment remedy may not be used as a method of forum shopping); *Consolidated Rail Corp. v. Brotherhood of Maintenance of Way Employees*, 847 F. Supp. 1294, 1306 (E.D. Pa. 1994) (declining declaratory judgment jurisdiction until "all voluntary processes of negotiation, conciliation and mediation have run their course").

The facts of this case are remarkably similar to those in *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 909 (N.D. Ill. 1998), decided in the neighboring Seventh Circuit. In that case, the trademark owner, Cheesecake Factory, sent plaintiff a cease and desist letter claiming a violation of Cheesecake's rights and requesting immediate compliance. *Id.* at 907. Cheesecake's letter also made it clear that it would take appropriate action if Eli's did not communicate an intent to comply within "ten days." *Id.* Six days later, and without first responding to the letter, Eli's filed suit in Illinois seeking a declaratory judgment of non-infringement. *Id.* Five days after that, Cheesecake filed a "mirror image" affirmative lawsuit in California federal court. *Id.* The court found it highly relevant that there had only been one letter sent before the declaratory judgment action was commenced:

> [A] declaratory judgment prevents one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit. [¶] However, the defendant here has not "continually" accused Plaintiff to its detriment. The June 26, 1998 letter from Defendant to Plaintiff served as the first and only occasion in which Defendant notified Plaintiff of the designation dispute. . . . Where, as here, the accused party has not been unfairly deprived of an opportunity to adjudicate his rights, a declaratory judgment is unnecessary. Based on the facts presented here, it appears to the Court that

7

> Plaintiff filed this action, not to "avoid the accrual of avoidable damages," because Plaintiff was not certain of its rights, but rather to secure this venue in anticipation of legal action by Defendant.

*Id.* at 908 (citations and internal quotation marks omitted).

Like the trademark owner in *Eli's*, Intel has not made "continual" accusations against ITS which might have reasonably led ITS to file a declaratory judgment action in order to adjudicate its rights. Rather, Intel only sent a single letter to ITS, seeking to open a dialogue regarding ITS' use of "ePayments Inside." However, ITS decided not to even answer Intel, opting instead to race to the courthouse on the day Intel had requested a response to its letter. ITS simply had no need to do so — it made no attempt to discuss the issue with Intel or to determine whether a lawsuit was really necessary (as Intel had done by sending its letter in the first place). Rather, as with the declaratory plaintiff in *Eli's*, ITS' filing is a transparent attempt to establish its hometown district as the location for the determination of this dispute.

As the court noted in *PAJ, Inc. v. Yurman Design, Inc.*, 1999 U.S. Dist. LEXIS 1424 (N.D. Tex. 1991), "the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action. [A party] cannot be permitted to transform a 'doctrine that was offered as a shield into a sword.'" Therefore, "[c]ases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that the first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." *Int'l Union v. Dana Corp.*, 1999 U.S. Dist. LEXIS 22525 (N.D. Ohio 1999).

Public policy considerations weigh heavily against an exercise of declaratory judgment jurisdiction in this case. Intel could have filed an affirmative trademark action immediately upon discovering ITS' use of "ePayments Inside." However, this would have been contrary to Intel's

commendable practice of attempting to reach an out-of-court resolution before filing suit – a practice which should be encouraged, not discouraged. *See, e.g., Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) ("[I]f litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute."). As the *Eli's* court noted:

> allowing a potential defendant to make a procedural preemptive strike robs the natural plaintiff of his ability to select his forum. . . . [P]rohibiting a "race to the courthouse," encourages settlement and discourages costly duplicate litigation. If the Court were to allow such maneuvering, litigants would have no alternative but to quickly file suits in the forum of their choice. Delay caused by a good faith effort at negotiation could deprive a litigant of a favorable venue. Such an incentive system would be highly inefficient.

*Eli's*, 23 F. Supp. 2d at 909. Thus, allowing this action to continue would create a strong disincentive for trademark owners such as Intel to attempt to resolve disputes out of court prior to filing of litigation. *See HPF, LLC v. Nu Skin Enter., Inc.*, 1999 U.S. Dist. LEXIS 15200, *7-8 (E.D. Pa. Sept. 27, 1999) (the Declaratory Judgment Act should not be "applied to encourage would-be trademark plaintiffs to file suit rather than resolve their disputes amicably by providing the incentive of forum choice to file suit quickly."). This Court should not reward ITS' failure to engage Intel in any negotiations by allowing this declaratory judgment action — a product of a race to the courthouse rather than a legitimate need to determine its rights — to proceed.

  B. The California Action Was Filed Where Intel Is the Rightful Plaintiff and the Entire Controversy Can Be Settled

Intel, the natural plaintiff and owner of the famous marks at issue, filed the California Action in the district where its principal place of business is located. Intel's complaint alleges California and common law unfair competition claims in addition to federal and state law statutory trademark and dilution claims. It further alleges violations of the Texas, Georgia, and Missouri state anti-dilution statutes. By contrast, ITS' complaint in this action seeks only a

9

declaratory judgment that its use of "ePayments Inside" neither infringes nor dilutes Intel's marks under *federal* law. Compl. ¶¶18-28. Therefore, regardless of which party prevails on ITS' declaratory judgment action, an existing controversy will remain concerning Intel's state law claims.

Significantly, there are material differences between Intel's claims for dilution under state law and federal law. Under the Federal Trademark Dilution Act, "[o]bjective proof of actual injury to the economic value of a famous mark, as opposed to a presumption of harm arising from a subjective 'likelihood of dilution' standard, is a requisite for relief." *Moseley v. V Secret Catalogue*, 537 U.S. 418 (2003). On the other hand, under the state statutory dilution claims contained in Intel's California complaint, the plaintiff need only prove that dilution is "likely" to occur as the U.S. Supreme Court itself recognized in *Moseley*. *E.g., Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc.*, 426 F.3d 1001, 1011 (8th Cir. 2005) (holding that Missouri dilution law only requires likelihood of dilution); *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 490 n.9 (5th Cir. 2004) ("In contrast to the FTDA, Texas anti-dilution law requires that the plaintiff establish 'an act likely to injure a business reputation or to dilute the distinctive quality of a mark'."); *Toyota Jidosha Kabushiki Kaisha v. Natural Health Trends Corp.*, 2005 U.S. Dist. LEXIS 10442 n.6 (C.D. Cal. 2005) ("Defendants argue that the holding of Moseley should affect how the California Supreme Court would interpret §14330. The language of the California statute is clear that 'likelihood of injury' is the standard."); *Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, 2003 U.S. Dist. LEXIS 8788 at *109 n.11 (N.D. Ga. 2003) ("Under the Georgia statute, a plaintiff need only prove a likelihood of dilution, rather than actual dilution.") Therefore, the declaration that ITS seeks in this action – that it does not

violate the limited Federal Trademark Dilution Act – would not resolve the question of ITS' liability under the state dilution statutes asserted in the California Action.

The existence of the California Action, the affirmative action based on the merits of the underlying substantive claims where all of the underlying claims are pending and can be fully heard and resolved, warrants dismissal of this action. The "existence of the coercive action is important to our determination that this declaratory action would serve no useful purpose." *Albie's*, 170 F. Supp. 2d at 740 (noting that subsequent coercive action will "help sharpen and refine the issues to be decided"). *See also Essex Group, Inc. v. Cobra Wire & Cable, Inc.*, 100 F. Supp. 2d 912, 915 (N.D. Ind. 2000) (dismissing first-filed declaratory action in favor of subsequent coercive action because to do so otherwise would discourage settlement and encourage costly duplicate litigation).

In the alternative to a dismissal, transfer of this action to the Northern District of California is appropriate pursuant to 28 U.S.C. § 1404(a) because judicial economy would best be served by this dispute being resolved along with the broader claims present in the California Action. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986) ("The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system.") (citations omitted).

## IV. CONCLUSION

In sum, the Sixth Circuit's decision in *AmSouth* compels dismissal of this action or, in the alternative, the transfer of this action to the Northern District of California. ITS' strategic decision to race to the courthouse rather than respond to Intel's good faith attempt to contact ITS and resolve this matter short of litigation, demonstrates that it filed suit merely for purposes of procedural fencing. Moreover, a declaratory judgment will not settle the controversy and a better, more efficient remedy exists in the pending California Action. To permit ITS to proceed with its declaratory judgment action will deter future pre-filing negotiations on the part of trademark owners, encourage unnecessary filings and overuse of judicial resources, result in piecemeal litigation and delay resolution of matters that might otherwise be amicably resolved.

Respectfully submitted,

/s/ Michael G. Long
Michael G. Long, Trial Attorney (0011079)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 433216-1008
Telephone: (614) 464-6297
Facsimile: (614) 719-4829

Attorneys for Defendant
INTEL CORPORATION

OF COUNSEL:
Peter E. Moll
HOWREY LLP
1299 Pennsylvania Avenue, N.W
Washington, D.C. 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

12

Bobby A. Ghajar (SBN 198719)
Ethan Andelman (SBN 209101)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion to Dismiss, or, In the Alternative, to Transfer, was served upon Stephen D. Jones, Esq., Roetzel & Andress, LPA, 155 East Broad Street, 12th Floor, Columbus, OH 43215, by regular U.S. Mail, postage prepaid, this 31st day of January, 2006.

*/s/ Michael G. Long*
Michael G. Long